UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CV-81-F

| | | |
|---|---|---|
| SHARON SOUTHWOOD, for herself, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | O R D E R |
| THE CREDIT CARD SOLUTION, a Texas general partnership or sole proprietorship; CCDN, LLC, a Nevada limited liability company; R.K. LOCK & ASSOCIATES, an Illinois general partnership d/b/a Credit Collections Defense Network or CCDN; ROBERT K. LOCK, JR., ESQ.; COLLEEN LOCK; PHILIP M. MANGER, ESQ.; and ROBERT M. "BOB" LINDSEY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on several motions: the Motion to Dismiss [DE-9] filed by

Defendants The Credit Card Solution, CCDN, LLC, R.K. Lock & Associates, Robert K. Lock,

Jr., Esq., Colleen Lock, Philip M. Manger, and Robert M. "Bob" Lindsey (collectively,

"Defendants"); the Amended Motion for Appointment of Receivers for All Defendants [DE-15],

Supplemental Motion to Appoint Receiver [DE-30], Supplemental Motion to Appoint Receiver

Second [DE-32], and Third Motion to Appoint Receiver Supplemental [DE-41], all filed by

Named Plaintiff Sharon Southwood ("Named Plaintiff" or "Southwood"), for herself and for all

others similarly situated; the Motion for Summary Judgment [DE-17] filed by Southwood; the

Amended Motion to Certify Class [DE-34] filed by Southwood, the Motion to Dismiss Lindsey

and TCCS per Rule 41(a)(2) [DE-43] filed by Southwood, and the Motion to Withdraw as

Attorney [DE-39] filed by Attorney Stephen A. Dunn and the firm of Emanuel & Dunn, PLLC.

These motions have long been ripe for ruling.

## I. PROCEDURAL HISTORY

Southwood initiated this action by filing a 56-page verified complaint on January 7, 2009, in the Superior Court Division of Bladen County, North Carolina, alleging seven claims for relief for herself and others: Count I alleges a claim for unfair and deceptive trade practices under North Carolina law, Count II alleges fraud, Count III alleges gross and willful legal malpractice, Count IV alleges a violation of the North Carolina Racketeer and Corrupt Organizations Act ("NC RICO"), Count V alleges a violation of the Credit Repair Organizations Act ("CROA"), Count VI alleges a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), and Count VII alleges a claim for civil conspiracy. Additionally, Southwood seeks to pierce the corporate veil of any entity defendants in an effort to hold the individual defendants personally liable for the alleged corporate misdeeds.

Defendants assert their counsel was served with a copy of the complaint on April 14, 2009, and they filed a Notice of Removal [DE-1] in this court on May 14, 2009. Defendants invoke federal jurisdiction on the grounds of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Prior to Defendants' filing of the Notice of Removal, Southwood filed several motions in North Carolina state court, including a motion for arrest & bail of Defendant Robert M. Lindsey, a motion for appointment of receivers for all entity defendants, and a motion for class certification. After receiving extensions of time to file an answer to the complaint, Defendants filed a Motion to Dismiss [DE-11].

2

Thereafter, Southwood filed an Amended Motion to Appoint Receiver for All Defendants [DE-15] and a Motion for Summary Judgment [DE-17]. Southwood later filed a Supplemental Motion to Appoint Receiver [DE-30], followed by a Suggestion of Bankruptcy [DE-31] as to Defendants Robert M. Lindsey and the The Credit Card Solution. Southwood later filed a Second Supplement to the Motion to Appoint Receiver [DE-32], a Suggestion of Dismissal of Bankruptcy and Lifting all Stays as to Defendant Robert M. Lindsey [DE-33], and an Amended Motion to Certify Class [DE-34].

Counsel for Defendants filed a Motion to Withdraw [DE-39] as counsel of record for all Defendants. Shortly afterwards, Southwood filed another Supplement to the Motion to Appoint a Receiver [DE-41], and another Suggestion of Bankruptcy as to Robert M. Lindsey and The Credit Card Solution [DE-42]. Southwood then filed a Motion to Dismiss Defendants Lindsey and The Credit Card Solution pursuant to Rule 41(a)(2) [DE-43], followed by a Notice of Bankruptcy Discharge of Defendants Lindsey and The Credit Card Solution [DE-44].

## II. MOTION TO DISMISS BOB M. LINDSEY AND THE CREDIT CARD SOLUTION

After Southwood filed her second Notice of Suggestion of Bankruptcy as to Defendants Robert M. Lindsey and The Credit Card Solution [DE-42], she filed a Motion to Dismiss Defendants Lindsey and The Credit Card Solution Without Prejudice per Fed. R. Civ. P. 41(a)(2) [DE-43]. In the Motion to Dismiss, Southwood opined that the bankruptcy case would stay the entry of final judgment as to the other defendants, and she therefore requested that her claims against Mr. Lindsey and The Credit Card Solution be dismissed without prejudice.

Thereafter, she filed another Notice [DE-44] stating that Defendant Robert M. Lindsey, and by extension, his sole proprietorship The Credit Card Solution, received a discharge per 11

3

U.S.C. § 327 in case number 10-38408 in the U.S. Bankruptcy Court for the Southern District of Texas. In the Notice, she opines that her alleged recovery against Defendant Lindsey was not discharged in the bankruptcy proceeding, noting that Mr. Lindsey did not list all of his "victims" on his schedules. Nevertheless, Southwood indicates that she reiterates her motion to dismiss Lindsey and The Credit Card Solution as defendants "so that judgment may be entered against the remaining Defendants." Notice [DE-44] at p. 1.

Rule 41(a)(2) of the Federal Rules of Civil Procedure allows a plaintiff to move for a voluntary dismissal of an action without prejudice at any time. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court," but generally a plaintiff's motion for voluntary dismissal without prejudice should not be denied absent substantial legal prejudice to the defendant. *Id.*

Courts generally consider the following factors when ruling on a motion for voluntary dismissal without prejudice: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." *Gross v. Spies*, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. 1998) (unpublished opinion) (citing *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996); *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994); *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987)). "These factors are not exclusive, however, and any other relevant factors should be considered by the district court depending upon the circumstances of the case." *Id.*

4

Having considered the preceding factors, the court finds no reason to deny Southwood's motion for voluntary dismissal. Accordingly, Southwood's Motion [DE-43] is ALLOWED, and her claims against Defendants Robert M. Lindsey and The Credit Card Solution are DISMISSED without prejudice.

### III. MOTION TO DISMISS–FACTUAL BACKGROUND

#### A. The Parties

The Credit Card Solution ("TCCS") is a general partnership or sole proprietorship with its principal address in Houston, Texas. Compl. [DE-1-3] at ¶ 6.[1] Defendant CCDN, LLC is a limited liability company organized under Nevada law with its principal address in Chicago, Illinois. Compl. ¶ 8. Defendant R.K. Lock & Associates is a general partnership with its principal address in Chicago, Illinois. Compl. ¶ 10. According to Southwood, both CCDN, LLC and R.K. Lock & Associates do business under various names, including "CCDN," "The CCDN," and "The Credit Collections Defense Network."[2] Compl. ¶¶ 8-10. Southwood alleges that each of these entities are "primarily in the business of obtaining advance payments of $2,500 to $8,000 by promising to restore credit, reduce debt to zero, and obtain damages from debt collectors, but then after obtaining the fee, do[] not restore credit, reduce debt, or obtain net damages from debt collectors." Compl. ¶¶ 6, 8, 10.

Southwood alleges that attorneys Robert K. Lock, Jr. and Phillip M. Manger are owners and managers of R.K. Lock & Associates and CCDN, LLC. Compl. ¶¶ 18, 23. She also alleges

---

[1] Although the court allows Southwood's motion to dismiss her claim against TCCS and Robert "Bob" M. Lindsey, the court still includes those parties in its recitation of the facts.

[2] Southwood also alleges that CCDN, LLC, does business as "R.K. Lock & Associates."

5

that Colleen Lock is a paralegal, married to Robert K. Lock, Jr., and is an owner of CCDN, LLC. Compl. ¶ 21. Robert M. "Bob" Lindsey is the managing partner of TCCS. Compl. ¶ 28.

## B. Alleged Scheme

Southwood alleges that the Defendants run a nationwide scheme that fraudulently promises "credit restoration" and purports to "reduce your debt to zero." Compl. ¶ 1. According to Southwood, Defendants promote the scheme and solicit business through several websites and videos posted on the websites and unrelated video-sharing websites. Compl. ¶¶ 46, 57. She also alleges that CCDN has contracted with other entities and persons to market its scheme. Compl. ¶ 44. Southwood contends that the CCDN's most successful marketer is Robert "Bob" M. Lindsey, and that TCCS ( which is either a general partnership managed by Mr. Lindsey or his sole proprietorship) markets CCDN's scheme. Compl. ¶¶ 53, 54.

In the scheme, as represented by Southwood, Defendants require advance payment to enroll in their "process." Compl. ¶ 91. Defendants then require an enrollee to execute a power of attorney authorizing Defendants to "prepare and sign all documents written with the intent of researching, challenging, negotiating, and otherwise corresponding with creditors, debt buyers, debt collectors, lw[sic] firms, credit reporting bureaus, and government agencies" with respect to specified accounts. Compl. ¶ 92. Southwood alleges that Defendants then send letters to enrollees' creditors demanding validation of enrollees' accounts, and asking the creditors to execute an affidavit drafted by Defendants that gives certain "assurances" regarding the enrollees' accounts. Compl. ¶¶ 93-94. She alleges Defendants then instruct enrollees not to repay debts. Compl. ¶ 100. According to the Southwood, Defendants–or those marketing Defendants' scheme–represent in videos and other testimonials on websites that they then

6

document various ways debt collectors violate the Fair Debt Collections Practices Act, "build a violations file[,]" and then turn the file over to an attorney who will file a lawsuit against the debt collector. Compl. ¶ 69. Defendants represent that the debt collector is then motivated to settle the lawsuit, and through the settlement the enrollee's debt is reduced to zero with no tax consequences, the enrollee's account is marked as paid with credit reporting agencies, and Defendants will collect the settlement money. Compl. ¶ 69.

Southwood, in the Complaint, purports to include transcriptions of various videos from the TCCS website[3] describing the CCDN "program" and which are also posted on various other websites. She alleges that each of these videos are deceptive for various reasons.

### C. Southwood's Counsel's dealings with Defendants

Southwood alleges the following regarding her current counsel's relationship with Defendants:

> On or about 21 March 2008, Mr. Lock, as part of his scheme to defraud North Carolinians, personally signed a written contract with counsel in this action to be performed in North Carolina, with the chief intent of deceiving the undersigned into assisting Mr. Lock and the other Defendants' fraudulent debt elimination scheme, but the undersigned timely recognized the true intent of Defendants' activities and immediately thereafter began assisting its victims; and even as to the legitimate service of defending CCDN clients from pending debt collection lawsuits, Mr. Lock breached the contract by never paying the undersigned the agreed $1,800 fee per case . . . .

Compl. ¶ 19.

---

[3] For some of the alleged transcriptions, Southwood provides a specific citation to an internet address associated with "The Credit Card Solution." *See* Compl. at ¶¶ 59, 61, 72, 79. For other of the alleged transcriptions, no internet cite is provided (other than an address associated with YouTube or another third-party provider), but the inference is that transcription is of a video on a website associated with "The Credit Card Solution." *See* Compl. ¶¶ 63, 66, 69, 76.

**C. Southwood's dealings with Defendants**

Southwood alleges that in December 2007, she had seven unpaid credit cards, all of which had dates of last activity more than three years old. Compl. ¶ 102. She alleges that an entity calling itself "Unifund CCR Partners" claimed that it had bought one of the old accounts, and a law firm commenced an action on Unifund CCR Partners' behalf against her in Lincoln County, North Carolina District Court to recover on the debt. Compl. ¶¶ 103-04. According to Southwood, no attorney in Lincoln County was willing to take her case. Compl. ¶ 105. In June 2008, she searched online "for a way to deal with this account and others" and found TCCS's website. Compl. ¶¶ 106-07. She allegedly viewed the website, and relied on Mr. Lindsey's representations on the site. Compl. ¶¶ 107-08.

Southwood alleges that on June 18, 2008, Lindsey emailed her a document entitled "The Credit Card Solution Purchase Agreement." Compl. ¶ 110. The Agreement stated it was being entered into between Southwood and "Bob Lindsey d/b/a The Credit Card Solution (hereinafter 'TCCS') as Authorized Agent (hereinafter 'AA') for the Credit Collections Defense Network (hereinafter referred to as 'CCDN')." Compl. ¶ 111. Southwood contends the Agreement stated: "Member will be provided with a Federally licensed attorney when the situation warrants at NO additional attorney fee cost to Member." Compl. ¶ 112. She also alleges the Agreement required her to supply to TCCS and CCDN "any and all documents, statements and other evidence requested by TCCS and CCDN representing existing debt which Member desires to eliminate as part of Member's participation in the Credit Restoration and Debt Invalidation program" within

8

60 days. Compl. ¶ 117. Southwood contends that after receiving the Agreement, she paid "Defendants" $5,600 on July 12, 2007.[4] Compl. ¶ 120.

Thereafter, Defendants provided Southwood with a letter to dispute the Unifund CCR Partners account, directed to Universal Bank, N.A., the original creditor on the account. Compl. ¶¶ 121, 124. Southwood sent the letter to Universal Bank, N.A. on July 17, 2008. Compl. ¶ 122. Southwood also alleges that Defendants supplied her with "templates and legal advice as to her pending case." Compl. ¶ 125. She contends that "Defendant Phil Manger, upon [her] asking, said he would refer her to a lawyer, but that she would have to pay the lawyer's fee herself." Compl. ¶ 126. Mr. Manger telephoned her current counsel to see if he would take on Southwood's case. Compl. ¶ 128.

Southwood's counsel then called Southwood herself, and determined that the Unifund CCR Partners account lawsuit was time barred and allegedly deficient for other various reasons. Compl. ¶ 129. Southwood's counsel filed a motion to dismiss or for summary judgment in the case, and thereafter, Unifund CCR Partners dismissed the case. Compl. ¶¶ 130-31. Her counsel was not paid by Defendants. Compl. ¶ 136. He instead charged Southwood a flat fee of $1,000. Compl. ¶ 133.

## IV. MOTION TO DISMISS–DISCUSSION

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v.*

---

[4] Given the other dates in the Complaint, the court assumes Southwood paid the $5,600 on July 12, 2008, not 2007.

*City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the " '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

Moreover, claims alleging fraud are subject to Federal Rule of Civil Procedure 9(b), which requires a plaintiff plead fraud with particularity. Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of the mind may be averred generally."). In the Fourth Circuit, a plaintiff must specify " 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' " *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297 (2d ed. 1990). Courts in the Fourth Circuit also have held that "where there are multiple defendants, plaintiffs must allege all claims with particularity as to each defendant."

10

*Dealers Supply Co., Inc. v. Cheil Indus. Inc.*, 348 F. Supp. 2d 579, 589 (M.D.N.C. 2004) (citing *Adams v. NVR Homes, Inc.*, 149 F.R.D. 243, 251 (D. Md. 2001)). *See also Baltimore Cnty. v. Cigna Healtcare*, 238 Fed. Appx. 914, 924 (4th Cir. 2007) (Wilkinson, J., dissenting); *United States ex rel. Carter v. Halliburton Co.*, No. 1:08cv1162 (JCC), 2009 WL 2240331, at *15 (E.D. Va. July 23, 2009). The failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5 (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) the plaintiff has substantial prediscovery evidence of those facts." *Id.* at 784.

## B. Unfair and Deceptive Trade Practices

The first claim asserted by Southwood is for unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* North Carolina General Statute Section 75-1.1(a) provides: "Unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a);*see also* N.C. Gen. Stat. § 75-16 (providing for a private cause of action). To state a claim for unfair and deceptive trade practices, a plaintiff must allege sufficient facts showing: 1) that a defendant committed an unfair or deceptive act or practice, 2) the action in question was in or affecting commerce, and 3) that the act proximately caused injury to plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). An act or practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially

11

injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (N.C. 1981). An act or practice is deceptive if it "has the capacity or tendency to deceive." *Id.* Furthermore, even though the ultimate issue of whether a particular act or practice is an "unfair or deceptive trade practice" is one of law for the court, disputes over the facts on which such a legal decision is based is reserved for the jury. *United Laboratories v. Kuykendall*, 335 N.C. 183, 187 n.2, 437 S.E.2d 374, 377 n.2 (1993).

Defendants move to dismiss Southwood's claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), arguing that Southwood's claim arises out of an alleged breach of contract–namely, the breach of the provision to provide legal services without additional charge–and this, without other "substantial aggravating circumstances" is not enough to state a claim for violations of UDTPA. *See, e.g., Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998) (explaining that a simple breach of contract is not an unfair or deceptive act, "but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies"). A review of the complaint, however, reveals that Southwood is not alleging that the failure of TCCS and/or CCDN to pay her legal fees, alone, constitutes an unfair and deceptive trade practice.

Rather, Southwood alleges that TCCS marketed CCDN's program, representing that the program would accomplish several things which, according to Southwood, either cannot be accomplished through the program's methods or are unlikely to be accomplished through such methods. *See, e.g.,* Compl. ¶ 61 (alleging that the TCCS website advertises that the program (1) can reduce credit debt to zero, (2) can restore a credit rating to an "excellent" rating, and (3) recover money for a program participant by suing debt collectors for violating federal law); ¶ 62

12

(alleging that the program cannot reduce credit card debt to zero, cannot give an excellent credit rating and is unlikely to result in a net recovery); ¶ 63 (alleging that the TCCS website asserted the program was "incredibly effective at getting anything negative knocked off your credit report"); ¶ 64 (alleging that the program could not get any *correct* negative information off a credit report). She alleges that the program was billed as providing an attorney at no additional cost to participants, but that neither TCCS nor CCDN had any intention of providing attorney representation to her. Compl. ¶¶ 112, 114. Southwood also alleges that the program recommends that participants cease paying off credit card debt. Compl. ¶ 63. She also alleges that after paying $5,600 to take part in the program, CCDN and/or TCCS sent her a dispute letter which contained incorrect statements of law. Compl. ¶¶ 121, 123.

The foregoing does not concern solely a breach of contract. Rather, the factual allegations paint a picture of a scheme promising relief that in many cases could not be delivered, and in some cases could result in more damage to a participant. The factual allegations, if proven, appear to constitute a practice that is substantially injurious to consumers and/or has the capacity to deceive. *See Marshall*, 302 N.C. at 548, 276 S.E.2d at 403; *see also Texas v. Jubilee Financial Solutions, L.P.*, No. 2009-43253, in the 215th Judicial District, May 27, 2011 Final J. and Permanent Inj. (noting that a jury found that Robert M. Lindsey and Jubilee Financial Solutions, L.P. d/b/a The Credit Card Solution violated the Texas Deceptive Trade Practices Act and enjoining the defendants from various actions with regard to services related to consumer debt). Accordingly, the court finds that the factual allegations are sufficient to satisfy the first element of a claim under UDTPA: that TCCS and Robert Lindsey allegedly committed an unfair and deceptive trade practice.

13

Defendants do not appear to contest the sufficiency of the allegations to support the remaining elements of the claim, i.e., that the act in question was in or affecting commerce and caused injury to Southwood. The only question that remains, therefore, is as to which of the Defendants Southwood has stated a claim for violations of UDTPA.

It is clear that Southwood has stated a claim for violations of North Carolina's UDTPA statute against TCCS and Robert Lindsey. Both of those defendants, however, have been voluntarily dismissed from this action. As to the remaining defendants, the court concludes that the factual allegations in the complaint are sufficient to state, at the very least, a claim for vicarious liability for UDTPA violations as to CCDN, LLC and R.K. Lock & Associates. Specifically, Southwood alleges that Robert Lindsey and TCCS were the authorized agents of "CCDN," which allows the inference that they were marketing and selling the "Credit Restoration and Debt Invalidation Program" on "CCDN's" behalf. *See* Compl. ¶¶ 111, 117. Under North Carolina law, a principal generally is liable for the torts of its agent when the torts are committed within the scope of the agent's authority. *See Vaughn v. Dept. of Human Resources,* 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979). *See also Phelps-Dickson Builders, L.L.C. v. Amerimann Partners,* 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (reversing summary judgment for defendant on UDTPA claim where defendant's agent made oral misrepresentations). The complaint alleges that both CCDN, LLC and R.K. Lock & Associates did business as "CCDN", *see* Compl. at ¶¶ 8, 10, which allows the plausible inference that Mr. Lindsey and TCCS were acting on behalf of one of the entities, or both. The court therefore

14

finds that Southwood has stated an UDTPA claim against CCDN, LLC, and R.K. Lock & Associates.[5]

## C. Fraud

Under North Carolina law, the elements of fraud include "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 287 (2007) (internal quotation marks omitted). "Additionally, any reliance on the allegedly false representations must be reasonable." *Id.*

Southwood, through her counsel, suggests in her response to the motion to dismiss that she may rely solely upon the following representation to establish her fraud claim: Paragraph 3 of the Purchase Agreement emailed to her by Bob Lindsey. Pl.'s Opp. to Mot. to Dismiss [DE-11] at p. 5 (arguing that Southwood has sufficiently pleaded the elements of fraud, "even only considering the 'The Credit Card Solution Purchase Agreement' "). That paragraph provides the following: "[Authorized Agent] represents and warrants that, prior to Member's purchase of the Product, [Authorized Agent] has fully presented and represented the Product to Member in accordance with all TCCS/CCDN policies, procedures, rules, and regulations." Compl. ¶ 115. Southwood argues that this representation constitutes a "false representation" because if "Defendants had correctly represented the Product, they would have told Named Plaintiff that the Product was worthless and illegal." Pl.'s Opp. to Mot. to Dismiss [DE-11] at p. 5. Southwood

---

[5] Although the court does not find that Southwood has alleged sufficient facts to state a claim for unfair and deceptive trade practices against the remaining individual Defendants–Robert K. Lock, Colleen Lock, and Philip Manger–the court assumes for purposes of this motion, as discussed below, that Southwood has alleged sufficient facts to state a piercing the corporate veil claim against those Defendants.

15

notes that the Verified Complaint alleges Paragraph 3 is "deceitful and unfair because TCCS/CCDN policy, whether written or not, is to fraudulently and illegally misrepresent the legality and effectiveness of their theories and programs." Pl.'s Opp. to Mot. to Dismiss [DE-11] at p. 5 (citing Compl. ¶ 116). This argument is plainly insufficient because the allegation in the Complaint does not identify which specific representations were false.

Southwood's Complaint also alleges, however, that in the Purchase Agreement, Lindsey d/b/a TCCS promised to provide Southwood with the services of a federally licensed attorney at no additional cost to Southwood, but in reality never intended to provide an attorney at no cost to her. Compl. ¶¶ 112, 114. She also alleges that in the Purchase Agreement Lindsey represented that the "program" was a "credit restoration and debt invalidation" program, but he knew the program could neither restore credit nor eliminate debt. Compl. ¶¶ 117-118. Southwood also alleges that she relied on this representation in entering into the Purchase Agreement and paying Defendants $5,600. Compl. ¶120.

Southwood's response, moreover, can also be read as suggesting that Southwood also relied upon representations that Mr. Lindsey made on the TCCS website, and that these representations support her claim for fraud. *See* Pl.'s Opp. to Mot. to Dismiss [DE-11] at pp. 6-7 (noting the fact that she alleged she read the TCCS website in early June 2008 and reasonably relied on Mr. Lindsey's representations on the site) (citing Compl. ¶¶ 106-107, 109). In the Complaint, Southwood provides alleged transcriptions of various videos on the TCCS website, and alleges that various statements made in the video are untrue. *See, e.g.,* Compl. ¶¶ 61, 62 (alleging that despite statements in the video to the contrary, "TCCS's program cannot reduce credit card debt to zero; cannot restore anyone's credit score . . . [and] does not file suits in

16

federal court"); ¶¶ 63, 65 (alleging that despite the statement in a video that "[w]e're incredibly effective at getting anything negative knocked off your credit report," the program is "completely ineffective at getting any correct negative information off of anyone's credit report"). Again, Southwood alleges she read the representations of the TCCS website in June 2008 and reasonably relied upon the same in paying $5,600. Compl. ¶¶ 106-07, 109, 120.

Furthermore, as discussed above, Southwood also alleges facts which allow the plausible inference that Bob Lindsey and TCCS were acting as agents of CCDN, LLC, R.K. Lock & Associates, or both. At this juncture, the court finds that Southwood has alleged sufficient facts to state a claim of fraud against CCDN, LLC and R.K. Lock & Associates.[6]

## D. Legal Malpractice

Defendants also argue that Southwood has failed to state a claim for legal malpractice. To state a claim for legal malpractice under North Carolina law, a plaintiff must allege facts showing "(1) that the attorney breached the duties owed to his client . . . and that this negligence (2) proximately caused (3) damage to the plaintiff." *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (N.C. 1985). A legal malpractice claim, therefore, in most cases,[7] first requires the existence of an attorney-client relationship which gives rise to a duty owed by an attorney to his client. Whether an attorney-client relationship exists is a question of fact. *Cornelius v.*

---

[6] Although the court does not find that Southwood has alleged sufficient facts to state a claim of fraud directly against the remaining Defendants–Robert K. Lock, Colleen Lock, and Philip Manger–the court assumes for purposes of this motion, as discussed below, that Southwood has alleged sufficient facts to state a piercing the corporate veil claim against those Defendants.

[7] In certain circumstances, not implicated by the allegations in the complaint, a third-party non-client may recover from an attorney's negligence. *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 406, 263 S.E.2d 313, 317 (1980).

17

*Helms*, 120 N.C. App. 172, 175, 461 S.E.2d 338, 339-40 (1995). " '[T]he relation of attorney and client may be implied from conduct of the parties . . . .' " *The North Carolina State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325 *cert. denied*, 314 N.C. 117, 323 S.E.2d 482, *cert. denied*, 474 U.S. 981 (1985).

Defendants argue that Southwood fails to allege sufficient facts to establish these elements. Specifically, Defendants argue that a claim for legal malpractice may only be stated against attorneys, and therefore, Southwood's claim for legal malpractice lies, if at all, only against the defendants in this case who are attorneys–Defendants Robert Lock and Phillip Manger. Defendants also argue neither Lock or Manger engaged in the practice of law on Southwood's behalf. Finally, Defendants argue Southwood has failed to allege any damage which was the result of legal malpractice.

To this court's knowledge, no North Carolina state court has directly addressed whether a legal malpractice claim may be asserted against one who is not a licensed attorney. In general, however, North Carolina law holds those who practice a particular profession without a license to the standard of care applicable to licensed professionals in negligence actions. *See, e.g., Grier v. Phillips*, 230 N.C. 672, 679, 55 S.E.2d 485, 679 (1949) (stating in a wrongful death action that a defendant who practiced dentistry without a license to do so was required to exercise the care and skill of a licensed dentist). In any event, assuming that a plaintiff may bring a claim for legal malpractice against a non-attorney, the plaintiff must still show that the defendant's breach of duties owed to her proximately caused her damage. In this case, Southwood generally alleges that Defendants "dispensed grossly erroneous legal advice, intending [Southwood] to follow same, proximately causing damage to [Southwood], entitling [Southwood] to actual damages."

18

Compl. ¶ 168. The allegations in the Complaint, however, do not give rise to the inference that the allegedly erroneous legal advice, dispensed after an attorney-client relationship arose, resulted in any damage to Southwood. Rather, as she clarifies in her response to the motion to dismiss, she seeks the amount she paid for the TCCS program and the costs she incurred in paying her current counsel in state court. These damages may be recoverable as being caused by fraud or breach of contract, but were not proximately caused by any deficient advice which arose of out of an attorney-client relationship. Accordingly, Defendants' Motion to Dismiss is ALLOWED as to the legal malpractice claim.

## E. RICO

The remaining defendants also challenge Southwood's claim under the federal RICO statute. Southwood, in this case, seeks treble damages and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c), which provides a civil remedy to "any person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." Although Southwood does not specifically cite to a particular subsection of § 1962 that Defendants allegedly violated, the allegations in the Complaint make clear she is asserting the "Individual Defendants" violated § 1962(c).[8]

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern

---

[8] Compare the statutory language of § 1962(c), stated *infra*, with the allegation in Paragraph 171 of the Complaint: "The facts as pleaded above show that the Individual Defendants unlawfully conducted the affairs of the RICO enterprises through an unlawful pattern of activity and thereby caused actual economic loss to Plaintiffs, thus violating 18 U.S.C. § 1962 . . . ."

19

of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). It is "aimed at the use of an enterprise to carry out racketeering activities." *Benard v. Hoff*, 727 F.Supp. 211, 213 (D.Md. 1989). To state a claim under § 1962(c), a plaintiff must allege facts sufficient to show a defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Whitney, Bradley & Brown, Inc. v. Kammermann*, No. 10-1880, 2011 WL 2489416, at *1 (4th Cir. June 23, 2011). Additionally, a plaintiff must allege that she suffered damage to "business or property" proximately caused by the defendant's RICO violation. *Sedima*, 473 U.S. at 496. In this case, Defendants contend Southwood failed to adequately plead sufficient predicate acts of racketeering and has failed to show that any of the alleged conduct proximately caused her any injury. The court will address each of the Defendants' arguments in turn, but first finds it necessary to set forth Southwood's allegations regarding which Defendants are liable for violating § 1962(c).

### 1. "Person" and Enterprise

Two elements fundamental to any RICO claim are "person" and "enterprise." The RICO statute defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" includes "any individual, partnership, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). In the context of a § 1962(c) RICO claim, a "person" is the individual or entity "employed by or associated with" the "enterprise." § 1962(c). Accordingly, in § 1962(c) actions, the "enterprise" must be distinct from the "person" alleged to have violated the statute. *Palmetto State Med.Ctr., Inc. v. Operation Lifeline*, 117 F.3d

20

142, 148 (4th Cir. 1997) ("The enterprise must be distinct from the persons alleged to have violated § 1962(c).").

In this case, Southwood alleges that the "Individual Defendants unlawfully conducted the affairs of the RICO Enterprises . . . ." Compl. ¶ 171. Because Southwood has dismissed her claims against Bob Lindsey, only the remaining "Individual Defendants"–Robert Lock, Colleen Lock, and Philip Manger–are alleged to be the persons who conducted a RICO enterprise. They are, therefore, the defendants at issue in this claim.

### 2. Predicate acts of racketeering activity

Under RICO, "racketeering," or a "predicate act," is broadly defined to include the commission of several federal statutory and state common law offenses. *See* 18 U.S.C. § 1961(1). Included in this definition are offenses referenced in Southwood's complaint: bank fraud, mail fraud, and wire fraud.— § 1961(1)(B). Here, the remaining defendants contend that Southwood has failed to adequately allege any predicate acts of racketeering.

#### a. Bank Fraud-18 U.S.C. § 1344

Southwood alleges that, as part of their general scheme, Defendants dispatch "notice and demand" letters to participants in their program to be sent to federally insured financial institutions by the participants, and in so doing, Defendants commit bank fraud in violation of 18 U.S.C. § 1344. Compl. ¶¶ 88, 97-98. Section 1344 prohibits any person from executing or attempting to execute a scheme or artifice (1) to defraud a financial institution or (2) to obtain any of the assets owned by or controlled by a financial institution by fraudulent means. 18 U.S.C. § 1344. Given the plain language of the statute, which is focused on financial institutions rather than other potential victims, most courts to have considered the issue have concluded that

21

only financial institutions have standing to allege bank fraud as a predicate act for RICO purposes. *See, e.g., Tunne v. Hedrick,* Civil Action No. 5:10CV-00181-JHM, 2012 WL 3644825, at *13 (W.D. Ky. Aug. 24, 2012) (explaining that only defrauded financial institutions have standing to assert bank fraud as a RICO predicate); *Soto v. Vanderbilt Mort. & Fin.*, No. C-10-66, 2010 WL 3363657, at *12 (S.D. Tex. Aug. 23, 2010) ("Although there is no prevailing case law in the Fifth Circuit, courts have consistently found that only financial institutions may claim bank fraud under 18 U.S.C. § 1344 as a predicate act for RICO purposes."); *Herrick v. Liberty League Int'l*, No: 1:07-cv-936, 2008 WL 2230702, at *4 (S.D. Ohio May 28, 2008) ("Only defrauded financial institutions have standing to assert bank fraud as a RICO predicate"); *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005) (same). *But see Hill v. Opus*, 841 F. Supp. 2d 1070, 1098 (C.D. Cal. 2011) (explaining that the "fact that banks are the intended victims of the bank fraud statute, however, does not categorically mean that plaintiffs who were otherwise injured as a result of bank fraud cannot assert claims under RICO" but nevertheless concluding that the plaintiff could not demonstrate causation). The court finds the reasoning of those courts holding that only financial institutions have standing to assert Bank Fraud persuasive and adopts it herein. Accordingly, because Southwood is not a financial institution, she may not rely on bank fraud as a predicate act to support her RICO claim.[9]

---

[9] Alternatively, even if Southwood does have standing to allege financial institution fraud as a predicate claim, she has not alleged sufficient facts to show that any of the individual defendants had the specific intent to defraud a financial institution (as opposed to the individual customers of TCCS/CCDN) or that the individual defendants were attempting to obtain assets controlled by a financial institution by fraudulent means. 18 U.S.C. § 1344.

22

### b. Mail and Wire Fraud–18 U.S.C. §§ 1341, 1343

Southwood also alleges that Defendants committed mail and wire fraud. The federal mail and wire fraud statutes prohibit similar behavior and therefore share similar elements. *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004) ("The federal mail and wire fraud statutes prohibit the use of the mails or interstate wires in furtherance of schemes to defraud.") (citing 18 U.S.C. §§ 1341, 1343). In a prosecution for mail fraud, the Government must prove (1) a scheme disclosing an intent to defraud; and (2) the use, or causing the use, respectively, of the mails or interstate wires in furtherance of the scheme. *Id.* In order to establish a scheme to defraud, the Government must prove that a defendant acted with the specific intent to defraud, which "may be inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Ham*, 998 F.2d 1247, 1254 (4th Cir. 1993). Assuming that a complaint adequately sets forth a scheme to defraud in connection with mail or wire fraud allegations, "each mailing or wire transmission in furtherance of the fraud scheme constitutes a separate offense." *United States v. Jefferson*, 674 F.3d 332, 367 (4th Cir. 2012). Additionally, it is not necessary to allege or show that a defendant personally placed a matter in the mails or placed the wire transmission which supplies the basis for liability under the mail and wire fraud statutes. Rather, it is only necessary that a defendant be a participant in a scheme to defraud and knew or reasonably should have known of the use of the mails or wires in connection with the scheme. *United States v. Perkal*, 530 F.2d 604, 606-07 (4th Cir. 1976) (rejecting a defendant's argument that he could not have violated the mail fraud statute because he did not personally place items in the mail, and explaining that " 'it is enough if he knows that in the execution of the scheme that letters are likely to be mailed, and if in fact they are mailed'

23

") (quoting *United States v. Cohen*, 145 F.2d 82, 90 (2d Cir. 1944)); *see also Pereira v. United States*, 347 U.S. 1, 8-9 (1954) (explaining that a defendant "causes the mails to be used when he or she acts "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen . . . .").

The Complaint clearly alleges that Bob Lindsey concocted "a scheme . . . for obtaining money or property from consumers by means of dozens of false and fraudulent pretenses, representations, and promises to restore credit and debt . . . ." Compl. ¶¶ 86-87. Lindsey, however, is no longer a defendant in this action. The question for this court, therefore, is whether the Complaint adequately alleges the remaining individual defendants were knowing participants in the alleged scheme to defraud. Although Southwood's allegations regarding the other individual defendants are far from comprehensive, the court is constrained to conclude that at this juncture, she has met this hurdle with at least Manger and Robert Lock. Specifically, Southwood alleges that Manger and Robert Lock are the leaders and founders of the "nationwide fraudulent and illegal 'credit restoration' and 'reduce your debt to zero' scheme" described in later detail in the Complaint. Compl. ¶¶ 1, 36. Southwood alleges that Lindsey, through TCCS, marketed CCDN's scheme. Compl. ¶¶ 44, 53. The allegations regarding the program offered by CCDN and its marketers, taken as a whole, allow the inference of the specific intent to defraud; that is, the allegations allow the reasonable inference that the entire purpose of the CCDN program–founded by Robert Lock and Manger–was to promise relief that in most instances, could not be delivered, in exchange for a fee. *See United States v. Gengler*, 2009 WL 5549225, at *14 (E.D.Va. Oct. 23, 2009) ("A scheme to defraud encompasses broadly any plan that is intended to defraud through a departure from 'fundamental honesty, moral uprightness, or fair

24

play and candid dealings in the general life of the community.' " ) (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d. Cir. 1987)). The court concludes that these allegations are sufficient to state that Robert Lock, Philip Manger and Lindsey were all knowing participants of a scheme to defraud.

The allegations as to Colleen Lock, however, do not pass the sufficiency threshold. Southwood does allege that Colleen Lock is an owner of CCDN, LLC, and that she sent emails to Southwood's counsel soliciting him to take the cases of several North Carolina consumers. Compl. ¶¶ 21-22. This, alone, however, does not allow the plausible inference that Colleen Lock was a knowing participant in the scheme to defraud. The only other mention of Colleen Lock, individually, in the Complaint are the conclusory allegations that because the Purchase Agreement Southwood signed referred to "TCCS/CCDN", "the Individual Defendants are conspiring with one another whether they work for or own TCCS or CCDN." Compl. ¶ 12; *see also* ¶¶ 31 ("All foregoing Individual Defendants have conspired with one another . . . ."); ¶¶ 89-90 (stating that because Lindsey referred to TCCS and CCDN as a single entity and communicates with Manger the names of consumers who need attorneys, "[t]his means that Mr. Lindsey and Mr. Manger are conspiring with Mr. and Mrs. Lock to operate CCDN and TCCS"). This is insufficient to raise the plausible inference that Colleen Lock was a knowing participant in the scheme to defraud. The RICO claim against her, therefore, is DISMISSED.

Because the Complaint adequately sets forth that Robert Lock and Manger were knowing participants in a scheme to defraud, each mailing or wire transmission in furtherance of the fraud scheme constitutes a separate offense, and is attributable to each defendant if he personally placed the matter in the mails or personally placed the wire transmission, or if he knew or

25

reasonably should have known of the use of the mails or wires in connection with the scheme. *See Jefferson*, 674 F.3d at 367; *Perkal*, 530 F.2d at 606-07. With regard to wire fraud, Southwood alleges that she relied on the representations on TCCS's website and on the representations set forth in the Purchase Agreement transmitted to her via email. Compl. ¶¶ 107-110, 120. She also alleges she received false and misleading legal advice as part of the scheme from "Defendants" transmitted over the interstate wires, presumably via email. Compl. ¶ 138. These allegations are sufficient to state a claim that Lindsey/TCCS used interstate wires, via email and the website, in furtherance of the scheme to defraud. *See, e.g.*, *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006) (finding there was sufficient evidence to support wire fraud conviction where defendant used the website "ebay" to facilitate fraudulent sales); *see also United States v. Stephens*, 571 F.3d 401, 406 (5th Cir. 2009) (explaining that "a variety of evidence" supported a defendant's conviction for wire fraud, including emails between defendants about scheme and money deposited into the defendant's accounts from donations to a fraudulent website); *Sophia v. Myicis*, No. C 07-02364 SI, 2008 WL 5411479, at *2 (N.D. Cal. Dec. 29, 2008) (finding that plaintiffs sufficiently pleaded elements of wire fraud in support of RICO claim because "use of the internet qualifies as use of United States wires"). Moreover, the facts alleged, as a whole, allow the plausible inference that both Robert Lock and Manger knew, or should have known, that Lindsey/TCCS, who allegedly was acting as an agent for CCDN, was using the interstate wires to conduct and further the scheme.

Southwood has not alleged sufficient facts, however, to sufficiently plead mail fraud as a predicate act. While Southwood does allege that Defendants, as a general part of the scheme, mailed its customers a Notice of Demand letter and accompanying affidavit to be sent to

creditors, *see* Compl. ¶¶ 93-94, she does not allege Defendants mailed a letter to her. Rather, she alleges "Defendants provided" her with a similar letter. *Id.* ¶ 121. There is no indication whether this provision occurred via the mails or via wires, or in person. Without such specificity, the court cannot conclude that Southwood has alleged sufficient facts to plead mail fraud as a predicate act.[10]

### 3. Proximate Cause

In Defendants' last attack on Southwood's RICO claim, they contend Southwood has failed to allege that any of the predicate acts proximately caused her injury. As the court has discussed with regard to Southwood's claim for fraud, however, she has adequately alleged that she relied on misrepresentations on the TCCS website, which was information transmitted over interstate wires, or conduct sufficient to constitute wire fraud. Her reliance on the misrepresentations, accordingly, establishes proximate cause. Southwood has, therefore, pleaded sufficient facts to state a claim against Defendants Robert Lock and Manger under § 1962(c).

---

[10] Defendants do not challenge whether Southwood has alleged sufficient facts to establish the "pattern" element of a RICO claim. To demonstrate a pattern of racketeering activity, a plaintiff must allege, at a minimum, that each RICO defendant committed two acts of racketeering activity within a 10-year period. 18 U.S.C. § 1961(5); *Palmetto*, 117 F.3d at 148. The allegations set forth above sufficiently allege at least three instances of wire fraud, attributable both Robert Lock and Manger. The court is cognizant, however, that the Fourth Circuit has expressed reservations about RICO claims where the predicate acts are isolated acts of mail fraud or wire fraud "because it will be the unusual fraud that does not enlist the mails and wires in its services at least twice." *GE Inv. Private Placement Partners II v. Parkere*, 247 F.3d 543, 549 (4th Cir. 2001). Given the Defendants' lack of argument on this point, the court will assume for purposes of this motion that Southwood's allegations regarding other customers of CCDN's program, *see* Compl. ¶¶ 142-157, will suffice to meet the pattern requirement.

## F. NC RICO

Southwood also alleges a violation of the North Carolina Racketeer Influence and Corruption Organizations Act, N.C. Gen. Stat. §§ 75D-1, *et seq.* ("NC RICO"). The NC RICO statute forbids any person from "engag[ing] in a pattern of racketeering activity," conducting or participating in an enterprise through a pattern of racketeering activity, or conspiring to do the same. N.C. Gen. Stat. § 75D-4(a). The NC RICO statute provides a private right of action for "[a]ny innocent person who is injured or damaged in his business or property by reason of any violation of G.S. 75D-4 involving a pattern of racketeering activity . . . ." N.C. Gen. Stat. § 75D-8(c).

"Pattern of racketeering activity" is defined under the NC RICO statute as "engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics" within a four-year period. N.C. Gen. Stat. § 75D-3(b). To have a cause of action under § 75D-8(c), however, the pattern of racketeering must include "at least one act of racketeering activity other than (i) an act indictable under 18 U.S.C. § 1341 or U.S.C. § 1343 . . . ." N.C. Gen. Stat. § 75D-8(c). Thus, the pattern of racketeering activity must include at least one act other than wire fraud–the sole type of predicate act supporting Southwood's federal RICO claim.

Southwood argues, in response to Defendants' motion to dismiss the NC RICO claim, that the felony set forth in N.C. Gen. Stat. § 14-100(a) serves as the predicate act different from wire fraud. Southwood, however, did not allege that any of the Defendants violated § 14-100(a) in the Complaint itself. Without such an allegation, Southwood's claim for violation of NC

28

RICO is deficient, and must be dismissed, without prejudice to her to seek leave to file an Amended Complaint attempting to adequately state a NC RICO claim.

## G. Credit Repair Organization Act

Southwood's final claim under federal law is for violations of the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1692 *et seq.*. Congress enacted the CROA in 1996 with two stated purposes: "(1) to ensure that prospective buyers of the services of the credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). To that end, the CROA "requires organizations that fall within its ambit to make certain disclosures prior to doing business with members of the public and prohibits them and persons connected with them from engaging in deceptive practices injurious to the public." *Zimmerman v. Puccio*, 613 F.3d 60, 70 (1st Cir. 2010)(citing 15 U.S.C. §§ 1679b-1679e).

In the Complaint, Southwood does not allege which specific provision of the CROA Defendants allegedly violated. In her response to Defendants' Motion to Dismiss, however, Southwood makes clear that she is alleging that Defendants violated 15 U.S.C. §§ 1679b(a)(3), (a)(4) and (b). Section 1679b(a)(3) makes it unlawful for any person to "make or use any untrue or misleading representation of the service of the credit repair organization," while § 1679b(a)(4) makes it unlawful for a person to "engage, directly or indirectly, in any act, practice, or course of business that constitutes or result in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair

29

organization." Section 1679b(b) , in turn, provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

Although some courts have taken an expansive view that proscriptions in § 1679b(a)[11] apply to "any person," *see, e.g., Bigalke v. Credittrust Corp.*, 162 F. Supp. 2d 996, 999 (N.D. Ill. 2001), this court previously has determined that the prohibited practices in § 1679b(a) apply "only to 'persons' acting in the context of credit repair organizations and services." *Bentley v. Alan Vester Auto Grp., Inc.*, No. 5:07-CV-434-F, 2009 WL 3125539, at *2 (E.D.N.C. Sept. 29, 2009) (expressly incorporating the opinion of Chief Judge Robert L. Hinkle in *Lopez v. ML #3, LLC*, 607 F. Supp. 2d 1310, 1311-14 (M.D. Fla. 2009)). Along this vein, Defendants argue that Southwood's CROA claim should be dismissed because she failed to allege any facts demonstrating that any of the named Defendants are "credit repair organizations" within the meaning of the CROA.

### 1. CCDN, LLC and RKLA may be credit repair organizations

Under the CROA, a "credit repair organization" is

any person who uses any instrumentality of interstate commerce or the mails to sell, provide or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of–

   (i) improving any consumer's credit record, credit history, or credit rating; or

---

[11] The proscription in § 1679b(b), by its express terms, only applies to "credit repair organizations."

(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . .

§ 1679a(3). Although the Fourth Circuit has not addressed the definition of "credit repair organization," the plain language of the statute requires the following to be established in order to find that a defendant is a credit repair organization: the defendant "(1) used any instrumentality of interstate commerce, or the mails to (2) sell, provide, or perform (or represent that [it] could do so) (3) in return for valuable consideration (4) services or advice about services (5) for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating." *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 511 (N.D. Ga. 2006). Defendants contend that because none of them sell or provide services to improve credit records, credit history, or credit ratings, they cannot be considered a credit repair organization under the CROA.

The allegations in the Complaint, however, include that Bob Lindsey emailed Southwood the Purchase Agreement, signed by Bob Lindsey d/b/a The Credit Card Solution, as "an authorized agent" for CCDN, to enroll Southwood in the "Credit Restoration and Debt Invalidation Program." Compl. at ¶¶ 111, 117. It is difficult to construe a "credit restoration" program as being anything other than a service, or program which includes advice about a service, to improve credit records, credit history, or credit ratings. If the factual allegations in the Complaint are taken as true–which they must be on a motion to dismiss–Southwood has alleged sufficient facts to show that "CCDN," through its authorized agent, Bob Lindsey, used an instrumentality of interstate commerce to sell a service or advice about a service for the express purpose of improving a consumer's credit record, credit history, or credit rating. Again,

31

Southwood alleges that both CCDN, LLC and R.K. Lock & Associates do business as "CCDN," *see* Compl. at ¶¶ 8, 10, allowing the inference that the purchase agreement was for a credit restoration program sold by one or both entities. At this stage of the proceedings, either CCDN, LLC or R.K. Lock & Associates may be a credit repair organization under the CROA.

Having concluded that, at the very least, the provisions of the CROA may be implicated by the Defendants' various alleged actions, the court will go on to determine whether Southwood has alleged sufficient facts to state a claim under the CROA.

### 2. Section 1679b(b) violations

Section 1679b(b) provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." Here, Southwood alleges she paid "Defendants" $5,600.00 by means of two certified checks. Compl. ¶ 120. Again, Southwood alleges the purchase agreement preceding her payment was between herself and an authorized agent of "CCDN." Compl. ¶ 111. The plausible inference from these allegations is that Southwood paid the credit repair organization–whether it be CCDN, LLC, or R.K. Lock & Associates–via its authorized agent prior to the credit repair organization performing any service for her. The court concludes that Southwood has stated a claim for a violation of § 1679b(b) as to both CCDN, LLC and R.K. Lock & Associates.

As to the remaining individual defendants–Robert K. Lock, Jr., Colleen Lock, and Phillip M. Manger–there are no allegations that Southwood paid them, personally, any money in exchange for services. Southwood does allege, however, that the individual defendants should

32

be held personally liable for any acts of the "entity defendants" under the theory of piercing the

corporate veil. Compl. ¶¶ 13, 32, 173. The First Circuit Court of Appeals has held that an

individual defendant may be liable under the CROA under a veil piercing theory. *See*

*Zimmerman v. Cambridge Credit Counseling Corp.*, 613 F.3d 60, 73-75 (1st Cir. 2010).

The remaining individual Defendants' motion to dismiss as to Southwood's claim for violation

of § 1679b(b) is therefore DENIED.

### 3. **Section 1679b(a)(3) and (4) violations**

Sections 1679b(a)(3) and (4) of the CROA provide that

> "[n]o person may . . . (3) make or use any untrue or misleading representation of
> the services of the credit repair organization; or

> (4) engage, directly or indirectly, in any act, practice, or course of business that
> constitutes or results in the commission of, or an attempt to commit, a fraud or
> deception on any person in connection with the offer or sale of the services of the
> credit repair organization.

18 U.S.C. § 1679b(a)(3), (4).

As the court has discussed above, Southwood has included allegations in the Complaint

indicating that Bob Lindsey (and TCCS) made at best, misleading statements, and at worse,

untrue statements resulting in fraud. *See, e.g.,* Compl. ¶¶ 61, 62 (alleging that despite statements

in the video to the contrary, "TCCS's program cannot reduce credit card debt to zero; cannot

restore anyone's credit score . . . [and] does not file suits in federal court"); ¶¶ 63, 65 (alleging

that despite the statement in a video that "[w]e're incredibly effective at getting anything

negative knocked off your credit report," the program is "completely ineffective at getting any

correct negative information off of anyone's credit report"); *see also F.T.C. v. RCA Credit Servs.*

33

*LLC*, 727 F. Supp. 2d 1320, 1329-30 (M.D. Fla. 2010) (concluding that unqualified statement that consumers could "Remove ANY and ALL Negative Accounts From Your Credit Report" with defendants' assistance was necessarily fraudulent where the Federal Trade Commission presented evidence that "no credit repair company can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report"). Moreover, Southwood has alleged sufficient facts to allow the plausible inference that Lindsey was acting as the agent of either CCDN, LLC, R.K. Lock & Associates, or both, and she has alleged that the corporate veils of those defendants should be pierced to impute liability to the remaining individual defendants. *See Zimmerman*, 613 F.3d at 72-73 (affirming district court's judgment of liability under § 1679b(a)(3) against individual defendants under a piercing the corporate veil theory where corporation, and employees of corporation, made misleading statements). The remaining Defendants' motion to dismiss as to Southwood's claim for violation of § 1679b(a)(3) and (4) is therefore DENIED.

## H. Civil Conspiracy and Piercing the Corporate Veil

Defendants also move to dismiss Southwood's claims for civil conspiracy and piercing the veil on the sole basis that Southwood has failed to state any underlying claims. Given the court's analysis of the preceding claims, that is not the case. Accordingly, because that is the only argument advanced by Defendants regarding the sufficiency of Southwood's claims for civil conspiracy and piercing the corporate veil, the court will assume for purposes of this motion that the claims are adequate, and Defendants' motion to dismiss is therefore DENIED as to those claims.

34

## I. Class claims

Defendants also argue that Southwood has failed to set forth any claim for class certification in the Complaint and that therefore the court should deny Southwood's motion to certify class, filed in state court prior to removal, and strike all allegations by which she seeks to assert any claims on behalf of any class or subclass. The court finds that rather than address these arguments in consideration with Defendants' motion to dismiss, it is proper to consider them in response to Southwood's motion to certify class, discussed below.

## V. MOTION TO WITHDRAW

Defendants' attorney, Stephen A. Dunn, and the law firm of Emmanuel & Dunn, PLLC, move to withdraw as counsel of record for defendants, because, *inter alia*, Stephen A. Dunn, Emmanuel & Dunn, and all of the firm's named partners have been named as defendants in another action filed in this court, *Taylor v. Bettis, et al.*, 7:09-CV-183, wherein Southwood and others allege, *inter alia*, that by representing Defendants and accepting attorney fees in the present action and other state court actions, the attorneys engaged in a pattern of racketeering activity in violation of RICO. Southwood and other plaintiffs in *Taylor* also allege various claims against the named Defendants in this action and additional Defendants. For good cause shown, the Motion to Withdraw [DE-39] is ALLOWED. Each of the remaining individual Defendants in this action–Robert K. Lock, Colleen Lock, and Phillip M. Manger–are ORDERED, within thirty (30) days of the filing date of this order, to cause new counsel to file a notice of appearance on their behalf, or file a notice of their individual intention to proceed pro se. **Defendants Robert K. Lock, Colleen Lock, and Phillip M. Manger are cautioned that**

35

**the failure to comply with this order within thirty (30) days may result in the entry of default against them.** Furthermore, Defendants CCDN, LLC and R.K. Lock & Associates are ORDERED, within thirty (30) days of the filing date of this order, to cause new counsel to file a notice of appearance on their behalf. **Defendants CCDN, LLC and R.K. Lock & Associates are cautioned that the failure to comply with this order within thirty (30) days may result in the entry of default against them.**

Additionally, prior to defense counsel filing the motion to withdraw as counsel of record, Southwood filed an Amended Motion to Certify a Class of Plaintiffs, including arguments additional to those presented in her original motion for class certification, filed in state court prior to removal, and also addressing, for the first time, why her current counsel should be appointed as class counsel pursuant to Rule 23(g). Prior defense counsel filed a motion to extend time on their clients' behalf, explaining that defense counsel would be moving to withdraw, and that Defendants would need additional time to retain counsel and prepare and serve responses. The court allowed the motion for extension of time, and allowed Defendants until September 10, 2010 to file a response to the Amended Motion to Certify a Class of Plaintiffs.

Defendants have not filed a response, but, given that the court has just ruled on defense counsel's motion to withdraw, and in an abundance of caution, **the court will allow Defendants an additional thirty (30) days from the date they cause new counsel to enter a notice of appearance, or for the Individual defendants, thirty (30) days from the date the individual defendant files a notice of his or her intention to proceed pro se, to file a response to the**

36

**Amended Motion to Certify Class.[12] Defendants must also file an Answer to the Complaint within that same time period.**

## VI. MOTION FOR SUMMARY JUDGMENT

Southwood also has filed a Motion for Summary Judgment [DE-17], seeking judgment "on all issues except punitive damages, in an amount of not less than $537,679,800.00 (five hundred thirty-seven million, six hundred seventy-nine thousand, eight hundred dollars and zero cents) jointly and severally from all Defendants, allocated to the Class, Subclass and Named Plaintiff . . . ." Mot. for Summ. J. [DE-17]. Southwood attaches thirty-nine exhibits to her motion for summary judgment, and argues, in part, that former defense counsel made general appearances on behalf of all Defendants in state court, and that many of the named Defendants subsequently failed to respond to discovery requests propounded by Southwood on former defense counsel. She contends Defendants therefore made admissions, and on the basis of those admissions plus additional exhibits she attaches to the motion, she and the proposed class are entitled to judgment.

---

[12] Additionally, Southwood makes reference in her various memoranda to opinions rendered by the North Carolina State Bar regarding her counsel's ethical obligations, or lack thereof, to Defendants. *See* Resp. to Mot. to Dismiss, Ex. 2 [DE-11-2] at pp. 1-2. Southwood's counsel is DIRECTED to file, within twenty-one (21) days, a copy of any written opinion rendered from the North Carolina State Bar on the subject of his ethical obligations to Defendants and its effect on his ability to represent Southwood, or in the absence of a written opinion, an affidavit stating the opinion he received from the State Bar. Southwood's counsel may move for leave to file the opinion or affidavit under seal, if necessary.

37

In response to the motion, Defendants move pursuant to Rule 56(d)[13] for an opportunity to conduct discovery, or, in the alternative, ask the court to exercise its discretion and allow it to respond twenty-one days after their Answer is due. Defendants do not address Southwood's argument regarding the extent of their former counsel's appearances or their purported admissions.[14]

## A. Admissions

As stated above, Southwood's Motion for Summary Judgment is premised, in part, on her assertion that Defendants CCDN, R.K. Lock & Associates, Robert Lock, Colleen Lock, and Phillip Manger all were served with Requests for Admissions and failed to respond to them. She contends that she served Defendants' former counsel with the Requests for Admissions on February 23, 2009.

At the time of the service of the Requests for Admissions, this action was pending in North Carolina state court. The applicable North Carolina Rule of Civil Procedure provides, in relevant part, the following:

---

[13] Defendants cited the then-applicable Rule 56(f) in their motion. Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) previously was codified as Rule 56(f). *See* Fed. R. Civ. P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged ... Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

[14] In their response to Southwood's Motion to Appoint Receiver, discussed below, Defendants dispute, in a footnote, whether Defendants, CCDN, LLC, R.K. Lock & Associates, Robert Lock, Coleen Lock and Manger were ever served with Requests for Admissions. *See* Resp. [DE-28] p. 4 n.1. Defendants also dispute some of Southwood's assertions regarding the nature and extent of their former counsel's appearances.

(a) Requests for admission. - - A party may serve upon any other party a written request for admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of facts or of the application of law to fact . . . . The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party. If the request is served with service of the summons and complaint, the summons shall so state.

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 60 days after service of the summons and complaint upon him.

N.C. Gen. Stat. § 1A-1, Rule 36(a). Accordingly, under Rule 36, a plaintiff may serve a

defendant with a request for admission *with or after* the service of the summons and complaint.

Here, the record suggests that Defendants CCDN, R.K. Lock & Associates, Robert Lock, Colleen

Lock, and Phillip Manger were served with the summons and complaint on April 14, 2009.

Notice of Removal [DE-1] ¶ 5. It appears that Southwood's service of Request for Admissions

on these Defendants on February 23, 2009, well prior to April 14, 2009, would be ineffective.

Southwood, however, argues that these Defendants already had made a general

appearance in this action, and therefore had waived the requirements of service of a summons

and complaint. She cites to N.C. Gen. Stat. § 1-75.7, which provides:

A court of this State having jurisdiction of the subject matter may, without serving a summons upon him, exercise jurisdiction in an action over a person:

(1) Who makes a general appearance in an action; provided, that obtaining an extension of time within which to answer or otherwise plead shall not be considered a general appearance; or

39

(2) With respect to any counterclaim asserted against that person in action which he has commenced in the State.

*Id.* Under North Carolina law, "a general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person." *Swenson v. Thibaut,* 39 N.C. App. 77, 89, 250 S.E.2d 279, 287-88 (1978)(quoting *In re Blalock,* 233 N.C. 493, 504, 64 S.E.2d 848, 856 (1951)). As the North Carolina Court of Appeals has explained:

> The North Carolina rule for determining what constitutes a general appearance has been well defined. The defendant's appearance must be for a purpose in the cause, not one merely collateral to it. The party must have asked or received some relief in the case or participated in some step taken in it. Essentially, whether the defendant has made a general appearance is whether she became an actor in the cause.

*Bethea v. McDonald,* 70 N.C. App. 566, 569, 320 S.E.2d 690, 692 (1984) (citing *William v. Williams,* 46 N.C. App. 787, 789, 266 S.E.2d 25, 27 (1980)). Both making a motion to continue a hearing and making a motion to disqualify counsel have been found by North Carolina courts to constitute a general appearance. *See Hardy & Newsome, Inc. v. Whedbee,* 244 N.C. 682, 683-84, 94 S.E.2d 837, 838 (1956) (where individual partners appeared in an action and filed motions to continue, partnership was deemed to have appeared in action); *Swenson v. Thibault,* 39 N.C. App. 77, 89-90, 250 S.E.2d 279, 287-88 (1978) (filing a motion to disqualify plaintiff's counsel "requested affirmative relief from the court and necessarily invoked the judgment of the court as to the issues raised" and therefore was a general appearance).

In support of her assertion that Defendants made a general appearance on or prior to February 23, 2009, Southwood relies on the following: (1) her assertion that Defendants' prior counsel made an appearance in the action on January 20, 2009 by appearing at the Bladen County

40

Courthouse and securing a continuance of the hearings scheduled that day and (2) a letter faxed by Defendants' prior counsel on January 20, 2009 to the Trial Court Administrator for Brunswick and Bladen Counties observing that he believed Southwood's counsel had made himself a necessary witness to the action.[15] *See* Mot. for Summ. J., Ex. 2 [DE-17-2]. As to Southwood's first assertion, the evidence she submits in support–the faxed letter–states that the hearings scheduled for January 20, 2009, were cancelled due to snow. *See id.* ("This letter is to memorialize our conversation today in which I informed you that when I appeared at the Bladen County Courthouse this morning I was informed that Superior Court had been cancelled due to snow."). The letter does state that former counsel had a conflict with appearing on January 21, 2009, but there is no indication the hearings were being rescheduled for that date and former counsel sought a continuance therefrom. Instead, the letter states that former counsel marked February 23, 2009, as the new date of the hearings. This court does not consider this to be a motion for a continuance such that former counsel made a general appearance on behalf of all the Defendants in this action.

Second, the faxed letter does not constitute a motion to disqualify Southwood's counsel. The letter advises that under separate cover, former counsel is going to ask Southwood's counsel to disqualify himself, and then asks that if the court "has taken action to remedy this sua sponte" to advise former counsel of the same. *Id.* The letter did not ask for relief from the court, and the

---

[15] Southwood also references a Notice of Hearing signed by former defense counsel on February 25, 2009, and a Certificate of Service attached to Defendant Bob Lindsey's Answer in this action, both of which identify former defense counsel as "Attorney for Defendants." Even if this court were inclined to interpret a scrivener's error as a "general appearance"–which it is not–these "appearances" occurred *after* Southwood purported to serve Requests for Admissions on the relevant Defendants.

41

court does not consider it to be a general appearance. *See Williams*, 46 N.C. App. at 789, 266 S.E.2d at 28 (quoting *Fulton v. Ramsey*, 67 W.Wa. 321, 68 S.E. 381 (1910) favorably which stated that "a conversation with . . . the judge of the court, about the case, [could not] be regarded as an appearance").

Accordingly, the court does not find that Defendants CCDN, R.K. Lock & Associates, Robert Lock, Colleen Lock, and Phillip Manger made general appearances in this action on or prior to February 23, 2009, and therefore the Requests for Admissions were ineffective as to them. The court does not deem their failure to respond to the Requests for Admissions to constitute an admission in this action.

## B. Motion for Summary Judgment on Class Claims

To the extent that Southwood seeks summary judgment on the class claims, the motion is premature. No class has been certified, and the court has allowed Defendants further time to respond to her motion for class certification. Accordingly, her Motion for Summary Judgment is DENIED as to all putative class claims, without prejudice for renewal after the court rules on the class certification motions.

## C. Rule 56(d) Request

With regard to Southwood's individual claims, "[a]s a general rule, summary judgment is appropriate only after 'adequate time for discovery.' " *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

42

considering the motion or deny it; (2) allow time to obtain affidavits or
declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Under Rule 56(d), a court may delay ruling on a motion for summary
judgment if the nonmoving party requires discovery to identify "facts essential to justify the
party's opposition." *Crawford-El v. Britton*, 523 U.S. 574, 599 n.20 (1998) (quotation omitted);
*Nader v. Blair*, 549 F.3d 953, 961-62 (4th Cir. 2008). However, "[r]ule 56(d) affidavits cannot
simply demand discovery for the sake of discovery." *Young v. UPS,* No. DKC 08–2586, 2011
WL 665321, at *20 (D. Md. Feb. 14, 2011). "Rather, to justify a denial of summary judgment on
the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must
be 'essential to [the] opposition.' " *Scott v. Nuvell Fin. Servs.,* No. JFM–09–3110, 2011 WL
2222307, at *4 (D.Md. June 7, 2011) (quoting *Young,* 2011 WL 665321, at *20). A non-moving
party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought
for discovery would not have by itself created a genuine issue of material fact sufficient to defeat
summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 953 (4th Cir.1995).

A party requesting relief pursuant to Rule 56(d) must specifically demonstrate that the
party has not had sufficient time to develop information it needs to oppose the summary
judgment motion. *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir.
2002). In making its determination, the court may consider the diligence that the non-moving
party has demonstrated in pursuing discovery. *See White,* 375 F.3d at 295 n. 2; *Harrods Ltd.,* 302
F.3d at 245; *Strag,* 55 F.3d at 953-54. An award of summary judgment prior to the completion
of discovery is "particularly inappropriate when a case involves complex factual questions about
intent and motive." *Harrods,* 302 F.2d at 247.

43

In this case, Defendants submit the affidavit of Defendant Philip Manger, who sets forth a variety of subjects he contends require discovery in order to enable Defendants to adequately respond to Southwood's motion for summary judgment. *See* Aff. of Manger [DE-25-2]. Although numerous subjects are listed within the affidavit, the court finds that only one subject–at least with regard to Southwood's individual claims–is uniquely within the control of Southwood herself and thus necessitates a brief period of discovery: the issue of Southwood's *reasonable* reliance on Defendants' alleged misrepresentations. *See, e.g., Johnson v. Lockman*, 41 N.C. App. 54, 58-59, 254 S.E.2d 187, 189 (1979)(explaining that "whether such reliance is reasonable is ordinarily a question for resolution by a jury" and collecting cases). The record also reveals that Defendants CCDN, Robert Lock, Colleen Lock, Philip Manger, and R.K. Lock & Associates have not had sufficient opportunity to engage in discovery. The record before the court shows that these Defendants joined in the removal of this action after being served with the Complaint, and have been waiting on a ruling on the motion to dismiss. Upon the filing of Defendants' Answers, the court will refer this matter to the assigned magistrate judge for entry of a scheduling order which will allow Defendants' a brief period to conduct discovery on Southwood's reliance and its reasonableness. Accordingly, the court will DENY, without prejudice, Southwood's motion for summary judgment, without prejudice for her to renew after a brief period of discovery.

## VII. MOTION TO APPOINT RECEIVER

Southwood also has filed a Motion for Appointment of Receivers for All Entity Defendants [DE-1-7], an Amended Motion to Appoint Receiver for All Defendants [DE-15], and supplements to her motions [DE-30; DE-32; DE-40]. In the original motion, Southwood sought

44

the appointment of a receiver for only the entity defendants. In the Amended Motion, Southwood moves for the appointment of receivers for *all* the Defendants, pursuant to N.C. Gen. Stat. § 1-502, and the court's inherent equity power, "to wind up all of Defendants' operations and marshal all of Defendants' assets for orderly distribution."

At the outset, the court must address what law governs the appointment of receivers in this action, asserting both federal claims and state-law claims. The majority of federal courts to have considered the issue have concluded that federal law governs a district court's decision on whether to appoint a receiver. *See Nat'l P'ship Inv. Corp. v. Nat'l Housing Development Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998) (concluding that federal law governs the appointment of a receiver in a diversity case); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); *see also* Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought . . . ."); 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, § 2983 (2d ed. 1997) (explaining that "*Hanna v. Plumer* makes it clear that the doctrine of *Erie Railroad Company v. Tompkins*, which requires application of state law on matters of substance, does not apply to the appointment of a receiver by a federal court").

"[T]he appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court." *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939); WRIGHT & MILLER, *supra* § 2983. "Because receivership interferes very seriously with the defendant's property rights, a party seeking the appointment of a receiver must generally show that he has some 'legally recognized right' in the property, such as a security interest, that amounts to more than a mere claim against the defendant." *Manuel v. Gembala*, No. 7:10-CV-4-

45

FL, 2010 WL 3860407, at *6 (E.D.N.C. Sept. 20, 2010) (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1131-32 (11th Cir. 1985)).

Here, Southwood can show that she has possible claims against the various Defendants, but she cannot show she has a legally recognized right to the property. *See Manuel*, 2010 WL 3860407, at *6 ("Even if plaintiffs' claim is meritorious, plaintiffs still have not demonstrated a 'legally recognized right' in defendants' property, such as a security interest, which would favor the appointment of a receiver."). Under these circumstances, the court, in its discretion, declines to appoint a receiver for any of the Defendants, and Southwood's various motions to do so are therefore DENIED.

## VIII. CONCLUSION

For the foregoing reasons, the court ORDERS the following:

(1) Plaintiff's Motion for Voluntary Dismissal [DE-43] is ALLOWED, and her claims against Defendants Robert M. Lindsey and The Credit Card Solution are DISMISSED without prejudice;

(2) Defendants' Motion to Dismiss [DE-9] is ALLOWED in part and DENIED in part; specifically, Plaintiff's claim for legal malpractice is DISMISSED, her claim under RICO against Colleen Lock is DISMISSED, and her claim under NC RICO is DISMISSED without prejudice to her to seek leave to file Amended Complaint attempting to state such a claim;

(3) Defense counsel's Motion to Withdraw [DE-39] is ALLOWED;

(4) Each of the remaining individual Defendants in this action–Robert K. Lock, Colleen Lock, and Phillip M. Manger–are ORDERED, within thirty (30) days of the filing date of this

46

order, to cause new counsel to file a notice of appearance on their behalf, or file a notice of their individual intention to proceed pro se. **Defendants Robert K. Lock, Colleen Lock, and Phillip M. Manger are cautioned that the failure to comply with this order within thirty (30) days may result in the entry of default against them;**

(5) Defendants CCDN, LLC and R.K. Lock & Associates are ORDERED, within thirty (30) days of the filing date of this order, to cause new counsel to file a notice of appearance on their behalf. **Defendants CCDN, LLC and R.K. Lock & Associates are cautioned that the failure to comply with this order within thirty (30) days may result in the entry of default against them;**

(6) All Defendants have an additional thirty (30) days from the date they cause new counsel to enter a notice of appearance, or for the Individual Defendants, thirty (30) days from the date the individual defendant files a notice of his or her intention to appear pro se, to file a response to the Amended Motion to Certify Class [DE-34] and an Answer to the Complaint;

(7) the court reserves ruling on the Amended Motion to Certify Class [DE-34] pending Defendants' response, if any, to the motion, and Southwood's reply;

(8) Southwood's Motion for Summary Judgment [DE-17] is DENIED without prejudice to renew;

(9) Southwood's Motions to Appoint a Receiver [DE-15, 30, 32, 41] are DENIED;

(10) Southwood's Motion to Expedite [DE-45] is ALLOWED;

(11) Southwood's counsel is DIRECTED to file, within twenty-one (21) days, a copy of any written opinion rendered from the North Carolina State Bar on the subject of his ethical

47

obligations to Defendants and its effect on his ability to represent Southwood, or in the absence

of a written opinion, an affidavit stating the opinion he received from the State Bar.

Southwood's counsel may move for leave to file the opinion or affidavit under seal, if necessary,

and

(12) the Clerk of Court is DIRECTED to serve the order on the remaining Defendants at

the following addresses:

CCDN, LLC
c/o Eastbiz.com
5348 Vegas Drive
Las Vegas, NV   89106

Colleen Lock
7144 North Harlem Avenue
Suite 323
Chicago, IL    60631

Robert K. Lock
7144 North Harlem Avenue
Suite 323
Chicago, IL    60631

R.K. Lock & Associates
c/o Robert K. Lock
7144 North Harlem Avenue
Suite 323
Chicago, IL    60631

Philip Manger
19 Taunton Hill Road
Newton, CT   06470

SO ORDERED.

This the 23 day of October, 2012.

_James C. Fox_

JAMES C. FOX
Senior United States District Judge

49